UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

Martha and Bartholomew Ramos, Individually, and as parents And natural guardians of Estevan Ramos,

Plaintiffs,

vs.

Carl A. Brown, M.D. and Ear, Nose & Throat Specialty Care of Minnesota, P.A.,

Defendants.

Civil No. 00-CV-2393 DSD/JMM

ORDER APPROVING MINOR SETTLEMENT

---

The above-entitled matter came on for hearing before the undersigned Judge of the United States District Court for the District of Minnesota on the Petition of Martha Ramos for approval of a minor settlement on behalf of her son, Estevan Ramos.

Mark N. Stageberg, Esq., appeared on behalf of the Petitioner, and David C. Brackett of Capital Planning, Inc. was present, and there were no other appearance on the part of any other party.

The Court being fully advised in the premises now makes its:

ORDER

It is hereby Ordered that:

I. That the settlement in favor of Estevan Ramos is approved.

II. That the terms and conditions of the settlement and the

FILED 5-15-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

Petition are approved in the following manner:

1. The gross settlement amount of $1,200,000 is reasonable and appropriate for the injury claim of Estevan Ramos and the nursing services claim of his parents, and shall be distributed as follows:

   a. For attorney's fees to Mark N. Stageberg, Esq. and James Lord, Esq., the sum of $400,000, together with unreimbursed expenses of $18,541.02.

   b. Payment to the Minnesota Department of Human Services in the sum of $20,000 in full satisfaction of their lien and subrogation interest.

   c. Payment to the Texas Department of Health in the sum of $685.07 in full satisfaction of their lien and subrogation interest.

   d. The plan for the investment of the remaining settlement proceeds in structured annuities and a trust for the benefit of Estevan Ramos, as outlined in exhibit A attached hereto, is approved with the following conditions:

      (1) The insurance companies issuing the annuities shall have a financial rating equivalent to A.M. Best Co. A+ Class 8

or better.

(2) That the original annuity policy and the original trust agreements be deposited with the clerk of Federal District Court and the policy and the trust documents shall be returned to the owner of the policy when;

(a) the minor reaches the age of majority;

(b) the terms of the policy have been fully performed; or

(c) the minor dies, whichever occurs first.

(3) The court shall permit a qualified assignment within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code.

(4) Provided that:

(a) The person receiving periodic payments is entitled to each periodic payment only when the payment becomes due;

(b) That the person shall have no rights to the funding source; and

(c) That the person cannot designate the owner of the annuity nor have any right to control or designate the method of investment of the funding medium; and

(d) That the defendant and third-party defendant will be entitled to receive appropriate receipts and releases, pursuant to the agreement of the parties.

III. That Petitioner is authorized to execute all releases, settlement documents, annuity documents, and trust documents on behalf of Estevan Ramos.

BY THE COURT

David S. Doty
Judge of Federal District Court

Dated this 15TH day of MAY, 2002.

# EXHIBIT A

Here's the settlement breakdown

| | | |
|---|---|---|
| Gross Settlement | $1,200,000.00 | |
| less: Attorney fees: | $ 400,000.00 | $439,226.09 |
| less: Costs & Disbursements: | $ 18,541.02 | |
| less: MN Dept. of Human Services: | $ 20,000.00 | |
| less: Texas Dept. of Health: | $ 685.07 | |
| Total Funds for Estevan: | $ 760,773.91 | |
| Cost of Annuity Package: | $ 374,918.65 | |
| Initial Investment into the Estevan Ramos Trust | $ 385,855.26 | |
| | $ 0 | |

EXHIBIT 1


Estevan Ramos
MONTHLY INCOME
$9,500
$9,000
$8,000
$7,022
$6,000
$5,579
$5,000
$4,000
$3,500
$3,000
$2,000
$1,000
$750
PART 1
Annuity pays $750 per month to age 18 to the trust. (06/27/2002 to 08/27/2014)
PART 3
[redacted]
PART 6
Life Insurance Funding - the annuity will provide the premiums for $250,0000 life insurance on Bart & Martha payable to the trust.
$7,022
$5,771
$4,743
$3,899
PART 5
Beginning 08/27/2036 annuity pays $40,000 per year ($3,333 per month) to the trust. These benefits increase 4% per year compounded annually. Payments are guaranteed for 10 years and life thereafter.
06/27/2002
Age 6
09/27/2014
Plus
on 08/27/2014 (age 18) the annuity pays $475,869.09 into the trust
PART 2
AGE 40
08/27/2036
AGE 45
AGE 50
AGE 55
AGE 60
[redacted]

EXHIBIT 2A

STRUCTURED FINANCIAL ASSOCIATES

# Proposal

PROPOSAL

ESTEVAN RAMOS, a minor
Date of Birth – 8/27/1996
Age - 5
Normal Remaining Life Expectancy – 73.12 Years*

| BENEFITS | COST | GUARANTEED PAYOUT | EXPECTED PAYOUT |
|---|---|---|---|
| **Guaranteed Quarterly Payments:** $2,250.00 paid quarterly beginning 6/27/2002 through and including the payment on 6/27/2014. | $81,123.48 | $110,250.00 | $110,250.00 |
| **Guaranteed Lump Sum Payment:** $475,869.09 on 8/27/2014 | 209,881.49 | 475,869.09 | 475,869.09 |
| **Guaranteed Annual Payments-20 Yrs.:** $177.50 paid annually beginning 6/27/2002 with the final payment on 6/27/2021. (Life Ins. Prem.-Martha) | 2,149.55 | 3,550.00 | 3,550.00 |
| **Guaranteed Annual Payments-20 Yrs.:** $210.00 paid annually beginning 6/27/2002 with the final payment on 6/27/2021. (Life Ins. Prem.-Bart) | 2,543.13 | 4,200.00 | 4,200.00 |
| **Lifetime Annual Income At Age 40:** $40,000.00 paid annually beginning 8/27/2036 for 10 years guaranteed, and lifetime thereafter. Payments increase at the rate of 4% compounded annually, the first increase effective 8/27/2037. (Pmts. Gtd. 8/27/2036 – 8/27/2045 whether Estevan is living or not) Payments after 8/27/2045 continue as long as Estevan is living, ceasing only at death. | 79,221.00 | 480,244.28 | 3,616,365.97* |
| **Qualified Assignment –no assignment fee** | | | |
| TOTALS: | $374,918.65 | $1,074,113.37 | $4,210,235.06 |

**Internal Rate of Return: 6.58%** (assumes claimant will live throughout life expectancy shown above)
Total Premium to Annuity Issuer: $374,918.65
Discounted present value of all non-life contingent periodic payments: $337,638.12
Discount rate used to determine discounted present value: 6.0%

**Any transfer of the periodic payments by the claimant may subject the claimant to serious adverse tax consequences. Structured Settlement payments may not be accelerated, advanced, assigned, decreased, deferred or increased.**

This proposal is for illustrative purposes only and is not intended for use as a contract. It is based on the current rates of Hartford Life Insurance Company, rated A+, Size XV by A.M. Best, assumes the use of a Qualified Assignment within the meaning or IRC Section 130, and funding on 5/27/2002 with no intervening rate changes. Rates are subject to change. This proposal will expire on 5/13/2002 or the date of a rate change if earlier.

05/06/2002-AMF-FINAL

Broker: Alice M. Frisbee, CSSC
SFA - St. Paul, MN
Phone: 800-433-3692 or 651 451-3667

EXHIBIT 3

STRUCTURED FINANCIAL ASSOCIATES

**Minnesota - Structured Settlement Disclosure Information**

TO: Mark Stageberg, Esq., counsel for Estevan Ramos

FROM: Alice M. Frisbee, CSSC

DATE: May 6, 2002

RE: Claimant: Estevan Ramos, a minor
Claim Number: 101539-2
Proposal Dated: May 6, 2002

**DISCLOSURE INFORMATION – As Required by MN Statute § 549.31**

**ANY TRANSFER OF THE PERIODIC PAYMENTS BY THE CLAIMANT MAY SUBJECT THE CLAIMANT TO SERIOUS ADVERSE TAX CONSEQUENCES.**

**STRUCTURED SETTLEMENT PAYMENTS MAY NOT BE ACCELERATED, ADVANCED, ASSIGNED, DECREASED, DEFERRED, OR INCREASED.**

| | |
|---|---|
| 1) Amount of Premium payable to Annuity Insurer: | $374,918.65 |
| 2) The nature and amount of any cost that may be deducted from any of the periodic payments. | -0- |
| 3) The amounts and due dates of the periodic payments to be made under the structured settlement agreement. | See Proposal - Proposed Schedule of Payments |
| In the case payments that will be subject to periodic percentage increases, the amounts of future payments may be disclosed by identifying the base payment amount, the amount and timing of scheduled increases, and the manner in which increases will be compounded. | Applicable See Proposal and Annuity Benefit Schedule |
| 4) The discounted present value of all periodic payments that are not life contingent. | $337,638.12 |
| The discount rate used in determining the discounted present value. | 6.0% |

100 Bridgepoint Curve, Suite 144
South St. Paul, MN
651-451-3667 or 800-433-3692
FAX 651-451-4893

STRUCTURED FINANCIAL ASSOCIATES

# Proposal

PROPOSAL

ESTEVAN RAMOS, a minor
Date of Birth – 8/27/1996
Age - 5
Normal Remaining Life Expectancy – 73.12 Years*

| BENEFITS | COST | GUARANTEED PAYOUT | EXPECTED PAYOUT |
|---|---|---|---|
| **Guaranteed Quarterly Payments:** $2,250.00 paid quarterly beginning 6/27/2002 through and including the payment on 6/27/2014. | $81,123.48 | $110,250.00 | $110,250.00 |
| **Guaranteed Lump Sum Payment:** $475,869.09 on 8/27/2014 | 209,881.49 | 475,869.09 | 475,869.09 |
| **Guaranteed Annual Payments-20 Yrs.:** $177.50 paid annually beginning 6/27/2002 with the final payment on 6/27/2021. (Life Ins. Prem.-Martha) | 2,149.55 | 3,550.00 | 3,550.00 |
| **Guaranteed Annual Payments-20 Yrs.:** $210.00 paid annually beginning 6/27/2002 with the final payment on 6/27/2021. (Life Ins. Prem.-Bart) | 2,543.13 | 4,200.00 | 4,200.00 |
| **Lifetime Annual Income At Age 40:** $40,000.00 paid annually beginning 8/27/2036 for 10 years guaranteed, and lifetime thereafter. Payments increase at the rate of 4% compounded annually, the first increase effective 8/27/2037. (Pmts. Gtd. 8/27/2036 – 8/27/2045 whether Estevan is living or not) Payments after 8/27/2045 continue as long as Estevan is living, ceasing only at death. **Qualified Assignment –no assignment fee** | 79,221.00 | 480,244.28 | 3,616,365.97* |
| **TOTALS:** | $374,918.65 | $1,074,113.37 | $4,210,235.06 |

**Internal Rate of Return: 6.58%** (assumes claimant will live throughout life expectancy shown above)

Total Premium to Annuity Issuer: $374,918.65

Discounted present value of all non-life contingent periodic payments: $337,638.12

Discount rate used to determine discounted present value: 6.0%

**Any transfer of the periodic payments by the claimant may subject the claimant to serious adverse tax consequences. Structured Settlement payments may not be accelerated, advanced, assigned, decreased, deferred or increased.**

This proposal is for illustrative purposes only and is not intended for use as a contract. It is based on the current rates of Hartford Life Insurance Company, rated A+, Size XV by A.M. Best, assumes the use of a Qualified Assignment within the meaning or IRC Section 130, and funding on 5/27/2002 with no intervening rate changes. Rates are subject to change. This proposal will expire on 5/13/2002 or the date of a rate change if earlier.

05/06/2002-AMF-FINAL

Broker: Alice M. Frisbee, CSSC
SFA – St. Paul, MN
Phone: 800-433-3692 or 651-451-3667

Structured Settlement Illustration

Annuity Benefit Schedule

Benefits for: ESTEVAN RAMOS
Date of Birth: 8/27/1996
Male, Age 6
Life Expectancy: 73.12

| Yr Start Date | Yr | Annualized Guaranteed Payment | Annualized Payment Only If Living | Total Payout For The Year | Total Payout To Date |
|---|---|---|---|---|---|
| 01/01/2002 | 1 | $7,137.50 | $0.00 | $7,137.50 | $7,137.50 |
| 01/01/2003 | 2 | $9,387.50 | $0.00 | $9,387.50 | $16,525.00 |
| 01/01/2004 | 3 | $9,387.50 | $0.00 | $9,387.50 | $25,912.50 |
| 01/01/2005 | 4 | $9,387.50 | $0.00 | $9,387.50 | $35,300.00 |
| 01/01/2006 | 5 | $9,387.50 | $0.00 | $9,387.50 | $44,687.50 |
| 01/01/2007 | 6 | $9,387.50 | $0.00 | $9,387.50 | $54,075.00 |
| 01/01/2008 | 7 | $9,387.50 | $0.00 | $9,387.50 | $63,462.50 |
| 01/01/2009 | 8 | $9,387.50 | $0.00 | $9,387.50 | $72,850.00 |
| 01/01/2010 | 9 | $9,387.50 | $0.00 | $9,387.50 | $82,237.50 |
| 01/01/2011 | 10 | $9,387.50 | $0.00 | $9,387.50 | $91,625.00 |
| 01/01/2012 | 11 | $9,387.50 | $0.00 | $9,387.50 | $101,012.50 |
| 01/01/2013 | 12 | $9,387.50 | $0.00 | $9,387.50 | $110,400.00 |
| 01/01/2014 | 13 | $480,756.59 | $0.00 | $480,756.59 | $591,156.59 |
| 01/01/2015 | 14 | $387.50 | $0.00 | $387.50 | $591,544.09 |
| 01/01/2016 | 15 | $387.50 | $0.00 | $387.50 | $591,931.59 |
| 01/01/2017 | 16 | $387.50 | $0.00 | $387.50 | $592,319.09 |
| 01/01/2018 | 17 | $387.50 | $0.00 | $387.50 | $592,706.59 |
| 01/01/2019 | 18 | $387.50 | $0.00 | $387.50 | $593,094.09 |
| 01/01/2020 | 19 | $387.50 | $0.00 | $387.50 | $593,481.59 |
| 01/01/2021 | 20 | $387.50 | $0.00 | $387.50 | $593,869.09 |
| 01/01/2022 | 21 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2023 | 22 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2024 | 23 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2025 | 24 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2026 | 25 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2027 | 26 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2028 | 27 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2029 | 28 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2030 | 29 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2031 | 30 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2032 | 31 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2033 | 32 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2034 | 33 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2035 | 34 | $0.00 | $0.00 | $0.00 | $593,869.09 |
| 01/01/2036 | 35 | $40,000.00 | $0.00 | $40,000.00 | $633,869.09 |
| 01/01/2037 | 36 | $41,600.00 | $0.00 | $41,600.00 | $675,469.09 |
| 01/01/2038 | 37 | $43,264.00 | $0.00 | $43,264.00 | $718,733.09 |
| 01/01/2039 | 38 | $44,994.56 | $0.00 | $44,994.56 | $763,727.65 |
| 01/01/2040 | 39 | $46,794.34 | $0.00 | $46,794.34 | $810,521.99 |
| 01/01/2041 | 40 | $48,666.12 | $0.00 | $48,666.12 | $859,188.11 |
| 01/01/2042 | 41 | $50,612.76 | $0.00 | $50,612.76 | $909,800.87 |
| 01/01/2043 | 42 | $52,637.27 | $0.00 | $52,637.27 | $962,438.14 |
| 01/01/2044 | 43 | $54,742.76 | $0.00 | $54,742.76 | $1,017,180.90 |
| 01/01/2045 | 44 | $56,932.47 | $0.00 | $56,932.47 | $1,074,113.37 |

Structured Settlement Illustration

Annuity Benefit Schedule

Continued for: ESTEVAN RAMOS

| Yr Start Date | Yr | Annualized Guaranteed Payment | Annualized Payment Only If Living | Total Payout For The Year | Total Payout To Date |
|---|---|---|---|---|---|
| 01/01/2046 | 45 | $0.00 | $59,209.77 | $59,209.77 | $1,133,323.14 |
| 01/01/2047 | 46 | $0.00 | $61,578.16 | $61,578.16 | $1,194,901.30 |
| 01/01/2048 | 47 | $0.00 | $64,041.29 | $64,041.29 | $1,258,942.59 |
| 01/01/2049 | 48 | $0.00 | $66,602.94 | $66,602.94 | $1,325,545.53 |
| 01/01/2050 | 49 | $0.00 | $69,267.06 | $69,267.06 | $1,394,812.59 |
| 01/01/2051 | 50 | $0.00 | $72,037.74 | $72,037.74 | $1,466,850.33 |
| 01/01/2052 | 51 | $0.00 | $74,919.25 | $74,919.25 | $1,541,769.58 |
| 01/01/2053 | 52 | $0.00 | $77,916.02 | $77,916.02 | $1,619,685.60 |
| 01/01/2054 | 53 | $0.00 | $81,032.66 | $81,032.66 | $1,700,718.26 |
| 01/01/2055 | 54 | $0.00 | $84,273.97 | $84,273.97 | $1,784,992.23 |
| 01/01/2056 | 55 | $0.00 | $87,644.93 | $87,644.93 | $1,872,637.16 |
| 01/01/2057 | 56 | $0.00 | $91,150.72 | $91,150.72 | $1,963,787.88 |
| 01/01/2058 | 57 | $0.00 | $94,796.75 | $94,796.75 | $2,058,584.63 |
| 01/01/2059 | 58 | $0.00 | $98,588.62 | $98,588.62 | $2,157,173.25 |
| 01/01/2060 | 59 | $0.00 | $102,532.17 | $102,532.17 | $2,259,705.42 |
| 01/01/2061 | 60 | $0.00 | $106,633.45 | $106,633.45 | $2,366,338.87 |
| 01/01/2062 | 61 | $0.00 | $110,898.79 | $110,898.79 | $2,477,237.66 |
| 01/01/2063 | 62 | $0.00 | $115,334.74 | $115,334.74 | $2,592,572.40 |
| 01/01/2064 | 63 | $0.00 | $119,948.13 | $119,948.13 | $2,712,520.53 |
| 01/01/2065 | 64 | $0.00 | $124,746.06 | $124,746.06 | $2,837,266.59 |
| 01/01/2066 | 65 | $0.00 | $129,735.90 | $129,735.90 | $2,967,002.49 |
| 01/01/2067 | 66 | $0.00 | $134,925.34 | $134,925.34 | $3,101,927.83 |
| 01/01/2068 | 67 | $0.00 | $140,322.35 | $140,322.35 | $3,242,250.18 |
| 01/01/2069 | 68 | $0.00 | $145,935.24 | $145,935.24 | $3,388,185.42 |
| 01/01/2070 | 69 | $0.00 | $151,772.65 | $151,772.65 | $3,539,958.07 |
| 01/01/2071 | 70 | $0.00 | $157,843.56 | $157,843.56 | $3,697,801.63 |
| 01/01/2072 | 71 | $0.00 | $164,157.30 | $164,157.30 | $3,861,958.93 |
| 01/01/2073 | 72 | $0.00 | $170,723.59 | $170,723.59 | $4,032,682.52 |
| 01/01/2074 | 73 | $0.00 | $177,552.54 | $177,552.54 | $4,210,235.06 |
| 01/01/2075 | 74 | $0.00 | $0.00 | $0.00 | $4,210,235.06 |

Payments other than shown in the Guaranteed Payment column will be made only if the measuring life is alive at the time the payment is due. If joint benefits are included, the payments illustrated will be made if both measuring lives are living. Depending on the joint benefit pattern, joint benefits may continue or reduce beyond the joint life expectancy illustrated.

Life Expectancy and Joint Life Expectancy is based on the actual age(s) of the claimant(s) and the 1983 Annuity Mortality Table without regard to any health impairment which may affect the actual longevity of the claimant(s).

# FINANCIAL RATINGS

## The Annuity Issuer:

Hartford Life Insurance Company

| | | |
|---|---|---|
| A.M. Best | - | A+, Size XV |
| Standard & Poor's | - | AA |
| Moody's | - | Aa3 |
| Fitch | - | AA+ |

## The Assignment Company:

Hartford CEBSCO

| | | |
|---|---|---|
| A.M. Best | - | None |
| Standard & Poor's | - | None |
| Moody's | - | None |
| Fitch | - | None |

## The Guarantee:

Hartford Life Insurance Company has agreed to guarantee the structured settlement liability obligations assigned to and assumed by Hartford CEBSCO (specimen attached)

# Evidence of Guarantee

Pursuant to a resolution adopted by its Board of Directors, Hartford Life Insurance Company (Hartford Life) has agreed to guarantee the structured settlement liability obligations assigned to and assumed by Hartford Comprehensive Employee Benefit Service Company ("Hartford CEBSCO"), where such liability obligations are assumed by Hartford CEBSCO on or after April 1, 1997 pursuant to a qualified assignment (as defined under Section 130 of the Internal Revenue Code of 1986, as amended), provided such liability obligations are funded through annuity contracts issued by Hartford Life.

Timothy P. Schiltz
Vice President
Asset Management Services
Hartford Life Insurance Company

Hartford Life

# Prepared for Estevan Ramos




EXHIBIT 2

MORGAN CHASE COMPANY
230 West Wells St.; Suite 403
Milwaukee, WI 53203
800-521-2359

BENEFIT COST SUMMARY FOR ESTEVAN RAMOS
(Taxable)

| | |
|---|---|
| ·x: Male DOB: 08/27/1996 | Quote Date : 05/04/2002 |
| ·e: 6 | Funding Date : 05/27/2002 |
| | SPT Rate Effective Date : 10/11/2001 |

LUMP SUM PAYMENTS

| ·ayment Type | Payment Date | Age | Amount | Freq | Cost |
|---|---|---|---|---|---|
| ·ETTLEMENT PRESERVATION TRUST) | | | | | |
| ·mp Sum | 08/27/2014 | 18 | $958,593.70 | | |
| TOTAL COST ................................... | | | | | $385,734.00 |

This is an illustration only and not a contract.
All payments are projected using historical interest rates and are subject to change with economic conditions.

·pared by : David C, Brackett Page: 1 Version: 3.15

MORGAN CHASE COMPANY
230 West Wells St.; Suite 403
Milwaukee, WI 53203
800-521-2359

BENEFIT COST SUMMARY FOR ESTEVAN RAMOS
(Taxable)

| | | | |
|---|---|---|---|
| ·x: Male | DOB: 08/27/1996 | Quote Date | : 05/04/2002 |
| ge: 18 | | Funding Date | : 08/27/2014 |
| | | SPT Rate Effective Date | : 10/11/2001 |

| Payment Type | Duration | Payment | Freq | COLA% | Cost |
|---|---|---|---|---|---|
| SETTLEMENT PRESERVATION TRUST) | | | | | |
| ·eriod | 09/27/2014-08/27/2036 22 yr(s) | $9,500.39 | M | 0.00% | |

LUMP SUM PAYMENTS

| Payment Type | Payment Date | Age | Amount | Freq | Cost |
|---|---|---|---|---|---|
| SETTLEMENT PRESERVATION TRUST) | | | | | |
| ımp Sum | 08/27/2036 | 40 | $1000000.00 | | |

TOTAL COST ....................................... $1,434,463.00

3,508,000
Total Payout

This is an illustration only and not a contract.
All payments are projected using historical interest rates and are subject to change with economic conditions.

# ESTEVAN RAMOS TRUST

This agreement of trust is hereby made and executed at Dallas County, Texas, effective as of this _____ day of _______________, 2002, by and between MARTHA RAMOS and BARTHOLOMEW RAMOS, hereinafter referred to as "Settlors," and MORGAN CHASE TRUST COMPANY, hereinafter referred to as "Trustee," in order to create an irrevocable trust known as the ESTEVAN RAMOS TRUST.

## ARTICLE I.

### Identification of Beneficiary

The beneficiary of this trust is Settlors' son, ESTEVAN RAMOS (hereinafter referred to as the "Beneficiary"). The Beneficiary's date of birth is August 27, 1996, and his social security number is 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. The Beneficiary suffers from a disability and is unable to engage in any substantial gainful activity by reason of a medically determinable physical impairment which has lasted and can be expected to last for a continuous period of not less than 12 months. The Beneficiary is a disabled person as defined in the Social Security Act, Section 1614(a)(3), 42 United States Code Section 1382C(a)(3). This Trust Agreement is intended to comply with the requirements of a "special needs" trust pursuant to the provisions of 42 United States Code Section 1396p(d)(4)(A), as amended August 10, 1993, by the Revenue Reconciliation Act of 1993, Pub. L. 103-55, and shall be construed in accordance with such intent.

## ARTICLE II.

### Trust Estate

Settlors have conveyed, transferred, and assigned, and do by these presents convey, transfer, and assign unto the Trustee the assets and properties described on Schedule A, attached to and incorporated by reference into this Trust Agreement, the receipt of which is hereby acknowledged by the Trustee.

Additional assets of the Beneficiary acceptable to the Trustee may be delivered to the Trustee at any time and from time to time by the Beneficiary's parent, grandparent, or legal guardian, or by a court, by instrument in writing. It is anticipated that additional assets will be contributed to the trust as a result of the settlement of the lawsuit styled, *Martha and Bartholomew Ramos, Individually and as Parents and Natural Guardians of Estevan Ramos v. Carl A. Brown, M.D., and Ear, Nose & Throat Specialty Care of Minnesota, P.A.*,, in Civil No. 00-CV-2393 in the United States District Court for the

District of Minnesota, Fourth Division (the "Lawsuit"). The Trustee shall hold, administer, and distribute the initial gift of property and any further additions of assets to the trust in accordance with the terms and conditions set forth in this Trust Agreement.

ARTICLE III.

Trust Irrevocable

This trust is irrevocable and shall not be subject to amendment, modification, or change by Settlors, the Beneficiary, any guardian of the Beneficiary's estate, or any other person.

ARTICLE IV.

Distributions and Termination

A. Purpose of Trust. The principal purpose and intent of the parties hereto is to provide a system for management, investment, and disbursement of the settlement proceeds for the benefit of the Beneficiary. The secondary intention of the parties hereto is to provide for the continuing conservation and enhancement of the settlement proceeds to supplement all other financial and service benefits to which the Beneficiary might be eligible as a result of his disability from any local, county, state, or federal agency, or through any public or private profit or nonprofit corporations or agencies.

1. It is not the intent of the parties hereto to place the settlement proceeds in trust for the purpose of qualifying the Beneficiary for state welfare benefits. However, it is likely that the settlement proceeds will be insufficient to meet all of the Beneficiary's possible future disability related needs for the remainder of his life. Thus, it is possible that such benefits may be sought in the future, notwithstanding the fact that the settlement proceeds allocated to the Beneficiary in the Lawsuit have been directed by the United States District Court for the District of Minnesota, Fourth Division, to be paid to this supplemental and discretionary trust.

2. It is the intention of the parties hereto to provide benefits for the Beneficiary without interfering with or reducing the benefits he would be entitled to receive from any state or federal agency, including the State of Texas Department of Human Services or its successor agencies and the United States Social Security Administration, and to maximize the benefits available to him. This trust is explicitly intended to be a discretionary trust and not a basic support trust, and the trust assets are intended to be used to supplement other benefits that the Beneficiary might be entitled to receive.

3. Further, it is not the intent of the parties hereto that the settlement proceeds shall be used to excuse the obligations of any person to provide for the Beneficiary's continuing maintenance and basic support under the laws of the

State of Texas. Payments from this trust are intended to be supplemental to such support obligations and shall not supplant the basic support obligations as determined by the laws of the State of Texas.

4. Notwithstanding the foregoing, it is acknowledged that the Trustee is a financial institution and is neither licensed nor skilled in the field of social services and/or governmental assistance programs. The Beneficiary's legal guardian or other legal representative, if any, shall be responsible for identifying programs that may be of social, financial, developmental, or other assistance to the Beneficiary, including seeking the assistance of federal, state, and local agencies that have been established to help the handicapped or disabled, and other similar resources. The Trustee may cooperate with and assist the Beneficiary's legal guardians or other legal representative, if any, but shall have no duty or responsibility to determine which programs are available to the Beneficiary. The Trustee shall not in any event be liable to the Beneficiary or any other party with respect to any aspect of the Beneficiary's eligibility for federal, state, or local public assistance benefits or programs, including, but not limited to, the failure to identify each and every program or resource that might be available to the Beneficiary on account of any handicap or disability.

B. Distributions. The Trustee shall have complete discretion to pay or use so much or all of the net income and/or corpus of the trust as the Trustee, in its sole discretion, may determine, to the legal or natural guardian or person having custody of the Beneficiary, or by expending such amounts directly to or for the benefit of the Beneficiary without the intervention of any legal guardian or other legal representative of the Beneficiary. Any undistributed income shall be accumulated and added to the corpus of the trust. All income and corpus distributed to the Beneficiary and all undistributed income and corpus held in this trust shall be considered as the separate property, not the community property, of the Beneficiary to the extent permitted under the Constitution and laws of the State of Texas.

1. In exercising the Trustee's discretion in making distributions from the net income and/or corpus of the trust, it is the intent that the Beneficiary live in pleasant, healthy, and comfortable surroundings and that the net income and/or corpus of the trust be paid out or used by the Trustee to whatever extent is appropriate to make available to the Beneficiary the best facilities and provisions for his health, education, welfare, and happiness that shall, in the sole discretion of the Trustee, be deemed reasonable, desirable, and appropriate. The express purpose of this trust is to provide for the Beneficiary's extra and supplemental needs, over and above the benefits he otherwise receives as a result of his handicap or disability from any local, state, or federal governmental source or from private agencies, any of which provide services or benefits to disabled persons. By way of illustration, the Trustee may purchase those goods or services which shall enhance the Beneficiary's development, welfare, and happiness, and provide for his special needs and/or supplemental needs, including but not limited to:

a. Dental care;

b. Unreimbursable medical expenses, including plastic and reconstructive surgery, diagnostic work and treatment, rehabilitative training and experimental medical services;

c. Ophthalmic and auditory care;

d. Psychological support services;

e. Recreation, cultural experiences, and transportation of the Beneficiary;

f. Expenditures for a person or persons to accompany the Beneficiary on vacations and outings;

g. Transportation of friends and/or relatives of the Beneficiary to visit the Beneficiary;

h. Expenditures to foster the interests, talents and hobbies of the Beneficiary;

i. Personal property and services which will make life more comfortable and enjoyable for the Beneficiary but will not defeat the Beneficiary's eligibility for public assistance;

j. Funeral and burial costs;

k. Personal care needs and companionship;

l. Supplemental nursing care;

m. Physical therapy or rehabilitation;

n. Differentials in cost between housing and shelter for shared and private rooms in institutional settings;

o. Similar care which other assistance programs may not otherwise provide;

p. Entertainment items (such as a television, VCR, or the like);

q. Evaluations of training and educational programs;

r. Expenditures to engage therapists and others to provide physical, occupational, aquatic, or other therapy or procedures for the Beneficiary, either at the Beneficiary's home or at the therapist's (or other provider's) regular office or treatment center;

s. Pay nutritionists, case workers, and other health or medical advisors; and

t. Pay nurses, nurses' aides, companion sitters or others (including, without limitation, family members) to care for the Beneficiary, and pay the expenses of any special training necessary or advisable for such persons to allow them to effectively work with or care for the Beneficiary.

2. During periods of time that the Beneficiary is not eligible for and/or has not applied for means-tested governmental public assistance benefits (such as SSI, medicaid, etc.), the Trustee shall have sole and absolute discretion as to the amount, timing, and purposes of any distributions from the net income and/or corpus of the trust for the benefit of the Beneficiary. On the other hand, during periods of time that the Beneficiary is receiving means-tested governmental public assistance benefits, the Trustee is specifically prohibited from expending any of the net income or corpus of the trust for any property, assistance, services, benefits, or medical care that is or otherwise would be available to the Beneficiary from any governmental source or from any insurance carrier required to cover the Beneficiary if, and only if, an application for such property, assistance, services, benefits, or medical care has been filed for the Beneficiary, or if he is receiving such assistance from a source that requires such restriction by its rules. In such case, and if the Beneficiary has applied for and/or is receiving assistance that requires such limitation, the Trustee may use trust property to supplement, but not to supplant, services, benefits, assistance, and medical care being received by the Beneficiary through any governmental resource so requiring the limitation.

3. It is recognized that there may be circumstances during the existence of this trust wherein it may be in the best interests of the Beneficiary to forfeit or forego the receipt of means-tested governmental public assistance benefits in order to avoid the restrictions on trust distributions and other requirements involved in the administration of a special needs trust. The responsibility for making this determination (as to whether it is in the Beneficiary's best interests to forfeit or forego means-tested governmental public assistance benefits for which the Beneficiary may be eligible) shall rest solely with the Beneficiary or the Beneficiary's legal guardian or other legal representative and not with the Trustee. The Trustee shall be entitled to rely upon written evidence that the Beneficiary or the Beneficiary's legal guardian or other legal representative has complied with any notice requirements to the appropriate administrative agencies that the Beneficiary is ineligible for or voluntarily elects not to apply for and/or receive any means-tested governmental public benefits. The Trustee, in its sole discretion, shall determine the written documentation necessary to establish that the Beneficiary is not receiving any means-tested governmental public assistance benefits. Upon receipt of such written evidence satisfactory to the Trustee, the Trustee may administer the trust as a

discretionary trust (and not as a special needs trust) until such time as (i) the Trustee receives written information that the Beneficiary (or the Beneficiary's legal guardian or other legal representative) has applied for or is receiving means-tested governmental public assistance benefits or (ii) the trust terminates.

4. In determining distributions to or for the benefit of the Beneficiary, the Trustee may consider all of the facts and circumstances in existence at the time of the Trustee's determination, including but not limited to: (i) the value of the assets of the trust; (ii) the standard of living to which the Beneficiary shall have been accustomed prior to the creation of the trust; (iii) any known resources of the Beneficiary; (iv) the ability of any person who is legally obligated to support the Beneficiary to do so; and (v) the ability of the Beneficiary to earn funds for the Beneficiary's own support and maintenance.

5. The Trustee may pay any premiums, co-payments, and/or deductibles for health care insurance for the Beneficiary.

6. The Trustee shall be authorized to pay any income tax liability of the Beneficiary which results from income received by the trust. The funds used to pay this income tax liability shall be paid directly to the appropriate taxing authority and shall not be available to the Beneficiary or be counted as a disqualifying resource against the Beneficiary. The Beneficiary shall not have any right to or interest in any of these funds paid by the Trustee. Further, these funds are not a resource of the Beneficiary and should not be treated as a distribution of income for purposes of medical assistance qualification or continuation.

C. Termination of Trust. Upon the Beneficiary's death, the trust shall terminate and, to the extent required by applicable law, the Trustee shall distribute the remaining trust assets to the State of Texas (or such other state that provides medicaid benefits to the Beneficiary) up to an amount equal to the total medical assistance paid on behalf of the Beneficiary under the State's medicaid plan for services furnished after September 30, 1993. If assets remain in the trust after any such distribution to the medicaid program, the Trustee shall distribute the remaining trust assets to the personal representative of the Beneficiary's estate to be administered as a part of his general probate estate.

## ARTICLE V.

## Trustee

A. Appointment. The initial trustee of this trust shall be MORGAN CHASE TRUST COMPANY.

If at any time there is a vacancy in the position of Trustee of a trust and none has been appointed pursuant to this trust agreement, the Settlors (or if one of the Settlors is

deceased or mentally incapacitated, then the other Settlor) shall appoint a successor Trustee. If a successor Trustee is not appointed as provided, then any court of competent jurisdiction shall appoint a successor Trustee, and the costs associated with such a court proceeding shall be paid from the trust or trusts for which the successor Trustee is appointed.

All references in this trust agreement to "Trustee" are to the Trustee(s) then serving as such. If more than one Trustee is then serving, then, except as otherwise provided, all discretionary decisions made by my Trustee shall be made unanimously (if two Trustees) or by majority decision (if more than two Trustees); however, any Trustee may delegate ministerial duties to any other Trustee by a signed, dated and notarized instrument filed with the trust records. The delegating Trustee may at any time revoke such delegation, such revocation being made in the same manner as the original delegation. So long as the delegation is in effect, any power or authority so delegated may be exercised by the Trustee to whom it was made with the same force and effect as if the delegating Trustee had itself joined in the exercise of such power or authority.

B. Appointment of Successor or Additional Trustee.

1. Who May Be Appointed. A successor or additional Trustee may be any qualified trust company or bank possessing trust powers with assets under administration valued at not less than $40,000,000.

2. Procedure. Appointment shall be made by an instrument acknowledged in a form sufficient for the recording of a deed in the State of Texas and filed with the trust records and, when effective, filed in the Deed Records of Harris County, Texas. Any such appointment may be changed or revoked prior to the date it becomes effective.

3. Trustee Reorganization. Any corporation that shall succeed (by purchase, merger, consolidation, or otherwise) to all or the greater part of the assets of any corporate Trustee shall succeed to all the rights, duties, and powers of such corporate Trustee, as Trustee of all trusts created by this instrument.

C. Resignation. A Trustee may resign from a trust without the necessity of court action; provided, however, that prior to such resignation written notice shall be given to every other Trustee then serving (or, if none, to the designated successor Trustee) and to each beneficiary who is then a permissible income beneficiary of the trust. Such notice shall immediately deprive the resigning Trustee of all powers as Trustee under this trust agreement (except powers needed to convey trust assets to the additional Trustee then serving or the successor Trustee).

ARTICLE VI.

General Provisions Relating to Trusts

The following provisions shall apply to each trust created by this instrument:

A. Compensation. Any Trustee not related to Settlors by blood or marriage shall be entitled to receive fair and reasonable compensation for services as Trustee. The regularly published fee schedule of any corporate Trustee shall be taken into account in determining what is fair and reasonable compensation for its services; provided, however, that the corporate Trustee's compensation shall not exceed the corporate Trustee's regularly published fee schedule for such services. Any Trustee shall be reimbursed for any and all reasonable expenses incurred in connection with the administration of the trust.

B. Bond. No bond or any other security shall be required of any Trustee, and all rights, powers, authorities, privileges, and discretions herein conferred upon the Trustee shall be exercised without the supervision of any court, it being intended that so far as can be legally provided the Trustee shall be completely free of all court supervision of any kind, including the requirements of any accounting to a court.

C. Liabilities. This instrument shall always be construed in favor of the validity of any act or omission of any Trustee, and a Trustee shall not be liable for any act or omission except in the case of its own misconduct, including its own negligence, bad faith, or fraud.

D. Accountings. Any Trustee shall furnish an annual accounting to the Beneficiary or guardian or other legal representative of the Beneficiary upon reasonable demand made therefor. If and to the extent required by a successor Trustee, an accounting for the administration of a trust created under this instrument shall also be given to the successor Trustee. A successor Trustee shall be fully protected in relying upon such accounting and also in not requiring such an accounting from his predecessor. The corporate Trustee's usual computer statements shall suffice for any accounting.

E. Spendthrift Provision. No beneficiary shall have the power to anticipate, encumber, or transfer his or her interest in the income or corpus of any trust in any manner. No part of the income or corpus of any trust shall be liable for or charged with any debts, contracts, liabilities, or torts of a beneficiary or subject to any divorce proceeding or seizure or other process by any creditor of a beneficiary.

F. Situs of Trusts. Each trust created under this instrument shall be governed by the laws of Texas. However, if the Trustee, in the Trustee's sole discretion, determines that a change of situs would be beneficial to the purposes of any separate trust established by this instrument, the Trustee shall have the discretion and authority to change the situs of any such trust to another state. Formal notice of any change of

situs may be given by the Trustee by the filing of a written declaration in the Deed Records of Harris County, Texas. If the situs of any such trust is changed to another state, then the trust shall, in all respects, be governed by the laws of the state which is the new situs. No such change of situs shall be authorized herein, however, which would result in a termination of the trust for federal tax purposes.

G. Powers and Duties of Successor Trustee. On the appointment and qualification of any successor Trustee, the same duties shall devolve on and the same rights, powers, authorities, privileges, and discretions shall inure to such successor Trustee as to the initial Trustee. All such rights, powers, authorities, privileges, and discretions shall be exercised without the supervision of any court. No successor Trustee shall have any duty, responsibility, obligation, or liability whatsoever for the acts, defaults, or omissions of any predecessor Trustee.

H. Fiduciary Obligation. The broad powers herein conferred upon the Trustee shall always be exercised only in a fiduciary capacity, and nothing herein shall be construed to limit the fiduciary obligation of the Trustee.

## ARTICLE VII.

## Powers of Trustee

Each Trustee shall have all of the rights, powers, and privileges granted to a trustee by the Texas Trust Code and all of the following rights, powers, and privileges unless specifically limited by other provisions of this instrument:

A. Partitions, Distributions. The Trustee shall have full power and authority to make all partitions, divisions, and distributions under this instrument, by allocating assets and property proportionately in kind or by allocating undivided interests therein in kind. Any partition, division, or distribution made by the Trustee in good faith shall be binding and conclusive on all interested parties.

B. Methods of Payment. If a beneficiary shall, in the opinion of the Trustee, be incapacitated by reason of age, illness, or any other cause at the time of a distribution, the Trustee may apply the distribution for the benefit of such beneficiary in any manner that the Trustee may deem advisable, whether by payment of such beneficiary's expenses or to any such beneficiary, the legal or natural guardian, the person having custody of such beneficiary, or any other person deemed suitable by the Trustee. If any property is distributable under this instrument to a minor person, the Trustee may make the distribution to a custodian (who may be the Trustee), selected by the Trustee, for the minor under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of Texas or any other state.

C. Conservation of Trust Properties. The Trustee may hold, manage, and conserve any and all properties transferred to the trust and may take any action that the Trustee may deem necessary or appropriate, including the exercise of all rights and

powers that a prudent owner would exercise in managing and conserving properties of a like kind.

D. Dealings With Third Parties. Except to the extent that the Texas Trust Code may expressly prohibit such power, any Trustee may deal with any person or entity, including himself or any other Trustee acting in an individual capacity and any person or entity related to the Trustee. Any Trustee, acting in an individual capacity, who has an existing contractual or other right to purchase assets from the trust estate may do so.

E. Investment in Securities. The Trustee may buy, sell or trade any security of any nature (including stocks, stock rights, warrants, bonds, debentures, notes, certificates of interest, certificates of indebtedness, and options) or any other things of value issued by any person, firm, association, trust, corporation, or body politic whatsoever.

F. Investment in Real Estate and Personal Property. The Trustee may, at such cost and upon such terms as the Trustee may deem advisable, purchase or otherwise acquire real estate and personal property of any kind and hold, manage, and conserve the same in whatever manner the Trustee may deem best; lease such property under a lease or leases to commence at once or in the future and for any period of time, even though such period may extend beyond the duration of the trust; renew and extend leases; partition, exchange, release, convey or assign any right, title or interest of the trust in any real estate or personal property owned by the trust; plat real estate and lay out and dedicate streets, alleys and ways; and improve and erect buildings on any and all real property (in addition to or substitution for buildings at any time existing thereon).

G. Selection and Retention of Investments. Any property acquired by the Trustee and at any time constituting any part of the trust shall be deemed a proper investment, and the Trustee shall be under no obligation to dispose of or convert such property. Investments need not be diversified, may be of a wasting nature, and may be made or retained with a view to possible increase in value. The Trustee may invest all funds available for investment at any time that the Trustee may deem advisable in such investments as the Trustee may be permitted to make pursuant to the terms hereof. The Trustee, unless otherwise herein specifically prohibited, shall have as wide a latitude in the selection, retention and making of investments as an individual would have in retaining or investing his own funds and shall not be limited to nor bound or governed by any statute or regulation respecting investments.

H. Holding Title to Investments. The Trustee may hold title to investments in the name of the Trustee or a nominee. If the trust owns assets located in a jurisdiction in which the Trustee cannot be authorized to act, then the Trustee may appoint any national bank authorized to act in such jurisdiction as trustee of such assets and confer on such trustee any power as may be necessary in the premises, but, in any event,

such trustee shall account for all net income and/or net proceeds from the sale of such assets to the Trustee acting hereunder.

I. General Powers. The Trustee may sell, exchange, alter, mortgage, pledge or otherwise dispose of trust property; borrow any sum believed by the Trustee to be necessary or desirable for protecting the trust or any part thereof, making any income or corpus payment or distribution, or for any other purpose which in the Trustee's opinion may be appropriate; pay all reasonable expenses; execute obligations, negotiable and nonnegotiable; join in, by deposit, pledge, or otherwise, any plan of reorganization or readjustment of any investments of the trust, and vest in a protective committee or other legal entity such power as in the Trustee's opinion may be desirable; and sell for cash and/or credit all or any part of the trust estate.

J. Power to Vote Stock. The Trustee may vote shares of stock in person or by proxy, with or without power of substitution; exercise and perform any and all rights, privileges and powers inuring to the holder of any stock or security comprising at any time a part of the trust, and exercise by agent or attorney-in-fact any right appurtenant to any property or matter in which the trust may be interested.

K. Protection of the Trust Estate. The Trustee may protect, perfect and defend the title to any trust property; sue and be sued; enforce any bonds, mortgages or other obligations or liens owned by the trust; compromise, arbitrate, or otherwise adjust claims in favor of or against the trust; waive or release rights of any kind; and abandon any property considered by the Trustee to be worthless.

L. Notes, Mortgages, and Foreclosures. The Trustee may, at any time, reduce the rate of interest payable on any bond, note, or other security owned by the trust; continue mortgages upon and after maturity, with or without renewal, or extend the same upon such terms as seem advisable to the Trustee without reference to the value of the security at the time of such continuance; modify or release any guaranty or mortgage; as an incident to collection of any bond or note, foreclose and bid in the property at foreclosure sale, acquire the property by deed from the mortgagor or obligor without foreclosure and retain the property so bid in or taken over without foreclosure.

M. Insurance. The Trustee may carry such insurance coverage (in stock companies or in mutual companies), including public liability, property damage and life insurance, for such hazards and in such amounts as the Trustee may deem advisable. With respect to life insurance, the Trustee may acquire life insurance on the life of any beneficiary or on the life of any person in whom a beneficiary has an insurable interest, other than Settlors, from any company in such amount and type as the Trustee may deem advisable, pay all premiums from either income or corpus, and designate as beneficiary the Trustee of this trust. With respect to all insurance policies held in the trust estate, unless the Trustee shall arrange for the automatic application of dividends in reduction of premium payments, dividends shall be treated as a return of corpus and applied to the payment of such premiums.

N. Employ and Compensate Agents and Representatives. The Trustee may employ and compensate agents and other employees, including attorneys, accountants and investment advisers, and may delegate to them any and all discretions and powers. The Trustee shall not be liable for any act or omission of an agent if the agent was selected and retained by the Trustee with due care and the Trustee neither knew nor should have known that the agent or representative was breaching his duties.

O. Establish and Maintain Reserves. Out of rents, profits, or other income received, the Trustee may set up reserves for taxes, assessments, insurance premiums, repairs, improvements, depletion, depreciation, obsolescence and general maintenance of buildings or other property.

P. Power to Determine Income and Corpus. Stock dividends and capital gains shall be treated as corpus. Except as herein otherwise specifically provided, the Trustee shall determine in accordance with general principles of federal tax law the manner in which expenses are to be borne and receipts credited between corpus and income and what shall constitute income, net income and corpus. In determining such matters, the Trustee may give consideration to, but shall not be bound by, the provisions of the Texas Trust Code.

Q. Liability of Third Party. No purchaser at any sale made by the Trustee or person dealing with the Trustee is obliged to see to the application of any money or property paid or delivered to the Trustee or to inquire into the expediency or propriety of, or the authority of the Trustee to enter into and consummate, any transaction.

R. Documents. The Trustee may execute and deliver any deeds, conveyances, assignments, leases, contracts, stock or security transfer powers, or any other written instrument of any character appropriate to any of the powers or duties herein conferred upon the Trustee.

S. Powers Cumulative. Except as herein otherwise provided, the powers conferred upon the Trustee shall not be construed as in limitation of any authority conferred by law but as in addition thereto.

## ARTICLE VIII.

### Definitions and General Provisions

A. Statutory References. All statutory references include subsequent amendments and corresponding provisions of any subsequently enacted laws.

B. Beneficiary Under Disability. The natural or legal guardian or other legal representative of any beneficiary who is a minor or, in the opinion of a Trustee, is otherwise legally or mentally disabled may act, receive notice, and sign any instrument on behalf of the beneficiary.

C. Consideration of Requests of the Beneficiary or Legal Guardian. The Trustee shall confer with the Beneficiary, the parents of the Beneficiary, Martha Ramos and Bartholomew Ramos, or the Beneficiary's legal guardian or other legal representative if the Beneficiary is an incapacitated person, from time to time concerning the needs of the Beneficiary and shall consider (but shall not be bound by) the requests of the Beneficiary or the Beneficiary's legal guardian or other legal representative, as the case may be, concerning the administration of the trust, including, but not limited to, the investment and distribution of the trust assets.

ARTICLE IX.

Acceptance By Trustee

Each Trustee by executing this Trust Agreement hereby acknowledges receipt of the assets and properties described in Schedule A attached hereto, accepts the trust created by this Trust Agreement, and covenants to faithfully discharge all duties of the Trustee hereunder.

ARTICLE X.

Binding Effect

This Trust Agreement shall extend to and be binding upon the heirs, executors, administrators, legal representatives, and successors, respectively, of the parties hereto.

IN WITNESS WHEREOF, this Trust Agreement has been executed effective as of the date first above written.

Settlor: ______________________________
MARTHA RAMOS

Settlor: ______________________________
BARTHOLOMEW RAMOS

Trustee: MORGAN CHASE TRUST COMPANY

By: ______________________________
Diane R. Redd, Trust Officer

Trustee: MORGAN CHASE TRUST COMPANY

By: [signature]
Diane R. Redd, Trust Officer

STATE OF TEXAS §
§
COUNTY OF DALLAS §

This instrument was acknowledged before me on this ____ day of ______________, 2002, by MARTA RAMOS in her capacity as Settlor.

(SEAL)

______________________________
Notary Public in and for the State of Texas

STATE OF TEXAS §
§
COUNTY OF DALLAS §

This instrument was acknowledged before me on this ____ day of ______________, 2002, by BARTHOLOMEW RAMOS in his capacity as Settlor.

(SEAL)

______________________________
Notary Public in and for the State of Texas

STATE OF *Wisconsin* §
§
COUNTY OF *Milwaukee* §

This instrument was acknowledged before me on this *7TH* day of *May*, 2002, by DIANE R. REDD, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said MORGAN CHASE TRUST COMPANY, as Trustee, and that she executed the same as the act of MORGAN CHASE TRUST COMPANY, for the purposes and consideration therein expressed and in the capacity therein stated.

(SEAL) NOTARY PUBLIC ☆ REBECCA J. EGGLESTON ☆ STATE OF WISCONSIN

Notary Public in and for *State of WI*
*Comm. exp. 7-11-04*

SCHEDULE A

TO

ESTEVAN RAMOS TRUST

Initial Assets: Cash in the sum of Ten Dollars ($10).

SETTLEMENT AGREEMENT & RELEASE

The parties to, and the consideration for, this Release are as follows:

I. RELEASORS: Estevan Ramos, a minor, by and through his parents and natural guardians Bartholomew Ramos and Martha Ramos; Bartholomew Ramos, individually; and Martha Ramos, individually

II. RELEASEES: Carl A. Brown, M.D.; Ear, Nose & Throat Specialty Care of Minnesota, P.A; and Midwest Medical Insurance Company

III. PAYOR: MIDWEST MEDICAL INSURANCE COMPANY, as liability insurer for defendants, Carl A. Brown, M.D. and Ear, Nose & Throat Specialty Care of Minnesota, P.A.

IV. CONSIDERATION:

A. Periodic Payments to the Trustee of the Estevan Ramos Trust, Morgan Chase Trust Company, Trustee, as follows:

1. The sum of $2,250.00 paid quarterly on the 27th day of every June, September, December and March beginning June 27, 2002 and continuing through and including the payment due June 27, 2014.
2. The sum of $475,869.09 on August 27, 2014.
3. The sum of $177.50 annually each and every year beginning June 27, 2002 and continuing through and including the payment due on June 27, 2021.
4. The sum of $210.00 annually each and every year beginning June 27, 2002 and continuing through and including the payment due on June 27, 2021.
5. The sum $40,000.00 annually each and every year beginning August 27, 2036 and continuing for the life of Estevan Ramos. Said annual payments shall begin in the amount of $40,000.00 and increase annually, on the anniversary date, at the rate of four percent (4%) per annum compounded annually. These payments are guaranteed for a period of ten (10) years through and including the payment due August 27, 2045. Should Estevan Ramos die after August 27, 2045 the payments shall then cease.

Payments in sub-paragraphs 1, 2, 3 and 4 are guaranteed, thus should Estevan Ramos die on or before June 27, 2021, then the payments will continue to be paid to the estate of Estevan Ramos as they fall due through and including June 27, 2021.

Payments in sub-paragraph 5 are payable for lifetime. They are guaranteed for ten (10) years through and including the payment due August 27, 2045, thus should Estevan Ramos die on or before August 27, 2045, then any remaining guaranteed payments will continue to be paid to the estate of Estevan Ramos as they fall due through and including August 27, 2045.

The Periodic Payments provided under Part IV, sub-paragraph A, to be paid to the Trustee of the Estevan Ramos Trust, will be provided through an annuity purchased from Hartford Life Insurance Company with a total cost of $374,918.65.

B. Cash forthwith, payable immediately upon Court approval as follows:
1. $385,855.26 to the Trustee of the Estevan Ramos Trust, Morgan Chase Trust Company, Trustee, the receipt and sufficiency of which is hereby acknowledged.
2. $400,000.00 jointly to Mark N. Stageberg and James F. Lord for attorneys' fees, the receipt and sufficiency of which is hereby acknowledged.
3. $18,541.02 to Mark N. Satgeberg for costs and reimbursable expenses, the receipt and sufficiency of which is hereby acknowledged.
3. $20,000.00 to the Minnesota Department of Human Services.
4. $685.07 to the Texas Department of Health.

It is understood and agreed that the payments provided under Part IV, sub-paragraph A, cannot be accelerated, deferred, increased or decreased by the RELEASORS or any payee, and, furthermore, RELEASORS or any payee have no power to sell, mortgage, encumber or anticipate payment, or any part thereof, by assignment or otherwise. All payments set forth above constitute damages received on account of personal physical injuries or physical sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

V. FULL AND FINAL RELEASE:
In consideration of the payments made or to be made by and on behalf of the PAYOR and defendants, as above stated, the RELEASORS do hereby release said PAYOR and defendants, their heirs, executors, administrators, successors and assigns, officers, agents and employees from any and all actions, causes of action, debts, dues, claims, and demands of every name and nature, both at law and in equity, which against said PAYOR and defendants, and parties released herein, the RELEASORS ever had, now have or may have for or by reason of any matter or thing to the day of the date of these presents, and especially from all claims and demands arising out of any and all personal injuries, damages, expenses, loss or damage, known or unknown, apparent and not apparent, present and future, alleged to have been caused by said PAYOR and defendant, or other parties released herein to the said RELEASORS at any time prior to the date hereof, and which have been asserted in or could have been asserted in a pending law action by RELEASORS against the parties released herein in the United States District Court for the District of Minnesota, Civil No. 00-2393(DSD/JMM).

VI. INDEMNITY AND HOLD HARMLESS:
As further consideration for their release, the undersigned RELEASORS acknowledge that the Minnesota Department of Human Services and the Texas Department of Health have asserted subrogation liens for certain medical expenses incurred which the Minnesota Department of Human Services and the Texas Department of Health allege is the responsibility of the persons or parties released, which legal liability is disputed and denied. In accepting this compromise settlement, RELEASORS represent, warrant and agree that they have a binding agreement with the Minnesota Department of Human Services and the Texas Department of Health that satisfies said insurers' subrogation rights asserted and, in addition, the RELEASORS acknowledge and agree that the amounts paid pursuant to this agreement are paid in reliance upon the express agreement, representation and warranty that the RELEASORS, with the proceeds from this settlement, will extinguish the liens asserted by the Minnesota Department of Human Services

and the Texas Department of Health. In addition, the undersigned RELEASORS hereby agree to accept full responsibility to satisfy all subrogation claims and/or liens asserted by medical insurers or any state or federal agencies of which the parties released hereto are unaware and further agree to indemnify and hold harmless said parties and, if necessary, defend said parties and Midwest Medical Insurance Company for any subrogation claims or liens asserted by the RELEASORS' medical insurers and/or any state or federal agency.

VII. QUALIFIED ASSIGNMENT:

Within the meaning of Section 130 (c) of the Internal Revenue Code of 1986 (the "Code"), PAYOR, Midwest Medical Insurance Company, may make a "qualified assignment" to Hartford Comprehensive Employee Benefit Service Company (the "Assignee"), of PAYOR's obligation to make the future payments described in Part IV, sub-paragraph A, hereof, (the "Periodic Payments") and such assignment releases PAYOR, Midwest Medical Insurance Company, and defendants from all future obligations. If such an assignment is made, the RELEASORS hereby consent to it and agree (a) that ASSIGNEE is not required to set aside specific assets to secure such Periodic Payments, (b) that ASSIGNEE's obligation to make Periodic Payments shall be no greater than those of PAYOR immediately preceding the assignment, and (c) that Periodic Payments from the ASSIGNEE cannot be accelerated, deferred, increased or decreased by payee; nor shall the payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments or any part thereof, by assignment or otherwise. Upon assignment, ASSIGNEE, or its designee, shall mail future payments directly to the payee named in this agreement.

PAYOR or ASSIGNEE, if such an assignment is made, may fund the Periodic Payments by purchasing a "qualified funding asset," within the meaning of Section 130 (d) of the Code, in the form of an annuity policy from Hartford Life Insurance Company (Life Insurance Company). All rights of ownership and control of such an annuity policy shall be vested in the designated ASSIGNEE. PAYOR or ASSIGNEE, if such an assignment is made, for designated ASSIGNEE or PAYOR's convenience, may make, or have Hartford Life Insurance Company make payments directly to the Trustee of the Estevan Ramos Trust, Morgan Chase Trust Company, Trustee.

If such an assignment is made, PAYOR shall be fully released from all obligations to make Periodic Payments and only ASSIGNEE shall be obligated to make the Periodic Payments. PAYOR's or ASSIGNEE's obligation to make each Periodic Payment shall be discharged upon mailing of a valid check in the amount due to the address so designated by the RELEASORS. Thirty (30) days prior notice of change of address must be must provided to ASSIGNEE by RELEASORS.

VIII. CONFIDENTIALITY:

The parties hereunto stipulate and agree that the terms of this Settlement Agreement & Release and the negotiations leading thereto, are confidential and may be revealed only as follows: (1) the amount of this settlement may be revealed in court documents necessary to conclude the settlement; (2) the terms and conditions of the Settlement Agreement and Release may be revealed to spouses, who in turn, agree to keep this information confidential and to be bound by the terms of this agreement; (3) to anonymous reporting to legal publications where neither the

names of the parties nor the venue is revealed; and in no other way. This paragraph becomes effective upon the date of the executing of this Settlement Agreement & Release.

IX. REPRESENTATION & ACKNOWLEDGEMENTS:

That RELEASORS hereby acknowledge that the payments provided for herein are all that will be received for this matter, and no promise for any other or further consideration has been made by anyone.

It is further understood and agreed that this Release represents a settlement as the result of compromise of a doubtful disputed claim, and that the aforesaid payments are not to be construed as an admission of liability on the part of the PAYOR or defendants, or any of them, by whom liability is expressly denied.

It is further agreed that this Release expresses a full and complete settlement of a liability claimed and denied and, that regardless of the adequacy of the compensation or the extent or character of the injuries, known and unknown, there is no agreement on the part of said PAYOR or defendant, or any of them, to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to.

RELEASORS hereby acknowledge representation by counsel.

RELEASORS further state that we have carefully read the foregoing release and know the contents thereof, and sign the same as our own free act and deed without reliance upon any tax or legal representations made by the parties released herein, or others on their behalf.

All parties agree to cooperate fully and to execute any and all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement & Release, which are not inconsistent with its terms.

This Agreement is effective upon court approval notwithstanding the date of signing hereof.

In presence of:................................ By:.......................................................

Bartholomew Ramos, individually, and as parent and natural guardian of Estevan Ramos, a minor

..................................................

Witness

............................ ................

Date Date

In presence of:................................ By:..........................................................
Martha Ramos, individually, and as parent and natural guardian of Estevan Ramos, a minor

..............................................
Witness

.......................... ................
Date Date

In presence of:................................ STAGEBERG LAW OFFICE

................................................ By:..........................................................
Witness Mark N. Stageberg

Date:..........................................

In presence of:................................ JAMES F. LORD, Attorney

................................................ By:..........................................................
Witness James F. Lord

Date:..........................................

In presence of:................................ MIDWEST MEDICAL INSURANCE COMPANY

................................................ By:..........................................................
Witness

Date:.......................................... Title:......................................................